UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EDWARD C. BREINER, *et al.*, | |
| Plaintiffs, | Case No. 2:05-CV-01412-KJD-RJJ |
| v. | **ORDER** |
| NEVADA DEPARTMENT OF CORRECTIONS, *et al.*, | |
| Defendants. | |

Presently before the Court is Defendants' Motion for Summary Judgment (#30). Plaintiffs filed a response in opposition (#42) to which Defendants replied (#55). Plaintiffs also filed Evidentiary Objections to Defendants' Motion for Summary Judgment (#41). Defendants filed a response in opposition (#56). Having read and considered Plaintiffs' evidentiary objections and good cause lacking, they are denied.

I.  Facts

Defendant the Nevada Department of Corrections ("NDOC"), formerly known as the Nevada Department of Prisons, originally selected Corrections Corporation of America ("CCA"), a private contractor, to design, build and operate the Southern Nevada Women's Correctional Facility ("SNWCF").  SNWCF opened in September 1997 housing up to 550 inmates and was certified by

the American Correctional Association in November 1998. Defendant Jackie Crawford became the Director of NDOC in May 2000.

After rumors and allegations of inmate and correctional officer misconduct at SNWCF became public in late 2002 and in 2003, Crawford had the NDOC Inspector General, Patrick J. Conmay, investigate. Between August 19 and August 21, 2003, Conmay and several investigators interviewed over two hundred inmates. The results of the investigation were set out in a report dated September 5, 2003. The findings included, but were not limited to, the following:

1. Frequent instances of inappropriate interaction between male correctional employees and female inmates (including at least one instance of a female inmate becoming pregnant after intercourse with a male correctional employee);
2. Male correctional employees observed in and out of closets and vacant pods accompanied by female inmates;
3. Male correctional employees missing from their assigned posts for most of the day without explanation;
4. An uninhibited sexual environment and nuance involving long-term relationships between female inmates;
5. An undue number of male correctional employees;
6. Flirtatious activities between male correctional employees and female inmates;
7. Intentionally sexually suggestive flirtation by female inmates attempting to compromise male correctional employees in an effort to distract them from security duties while other female inmates engaged in illicit behavior and in an effort to enhance privileges;
8. Many male correctional employees fell prey to the inappropriate activities;
9. A lack of supervisory and management oversight and control over male correctional employees;

10. No evidence of supervisors or managers recognizing the risky behavior or taking steps to stop it;
11. Male correctional employees routinely introduced a variety of contraband, such as alcohol, narcotics, cosmetics, jewelry, foodstuffs, and toiletries, as a result of being compromised;
12. Reports of unusual activity are lost or inconsistently acted upon;
13. A lack of a designated investigative function;
14. Administrators have failed to successfully identify the problem; and
15. A widespread knowledge and acceptance of the inappropriate activities.

See NDOC Inspector General Investigation Report, p. 4-5, Appendix of Exhibits to Defendants' Motion for Summary Judgment, Vol. 1, Ex. C.  Conmy concluded that SNWCF had a leadership void, a management team that could not address serious problems, and an administration slow to identify problems and unsuccessful in obtaining easily located evidence.  He recommended, amongst other items, replacing the management team at SNWCF, emphasizing training of line officers with an emphasis on team building and ethical behavior and retraining subordinate correctional employees with an emphasis on female inmate con games and ethical behavior.

When pushed to make changes, CCA withdrew from operating SNWCF.  Crawford could not locate a qualified private entity to run the position and recommended to the Governor and legislators that NDOC take over operation of SNWCF.  Her recommendation was adopted and she began planning to create a management system at SNWCF that would end the systemic problems.  Her review determined that may of the correctional employees compromised at SNWCF were male correctional employees in supervisory positions.  Crawford was also concerned that male supervisors, including lieutenants, were required to regularly check the female inmate housing units.

Crawford also considered training provided in 2004 by the United States Department of Justice, National Institute of Corrections entitled "Working With Women Offenders: Implications for

Managers, Supervisors and Employees." The training focused on using gender responsive strategies in facilities holding female inmates.

One part of Crawford's plan in restructuring SNWCF was to place three female correctional officers (Correctional Lieutenants) in supervisory roles in order to reduce the number of male correctional employees being compromised by female inmates. Another part of the plan aimed to utilize a 70 percent female to 30 percent male ratio for subordinate correctional employee positions. The three Correctional Lieutenants would be hired through selective certification. Crawford believed that this process had been approved by the Nevada Department of Personnel ("NDOP") when it issued State of Nevada Job Announcement No. 530344. See State of Nevada Job Announcement No. 530344, Appendix of Exhibits to Defendants' Motion for Summary Judgment, Vol. 1, Ex. F.

The announcement was posted online at the NDOP website and bulletin boards at NDOC correctional facilities. Qualifications required that the applicant be female, have a minimum of one year work experience as a Correctional Sergeant in the State of Nevada or possess an equivalent combination of education and experience. In addition to other requirements, candidates would also have to pass an oral examination. Two of the three positions were filled on an emergency basis pursuant to Nevada statute. NDOC assumed operation of SNWCF in October 2004.

The job announcement closed October 18, 2004. A total of twenty (20) applicants, male and female, applied for the positions.[1] An NDOP recruiter determined that twelve (12) of the twenty (20) applicants were qualified. Ten (10) of the twelve (12) applicants passed the oral examination. Eventually, three female applicants, including one of the two who had been hired on an emergency basis, were selected for the positions.

Plaintiff Randy Stout attempted to block the hiring of the women through the NDOC's grievance process. All Plaintiffs filed charges of discrimination with the Nevada Equal Rights Commission and the Equal Employment Opportunity Commission. In response, Crawford again

---

[1] None of the Plaintiffs in this case applied for the positions.

4

sought permission for the female only appointments from the NDOP Director, Jeanne Green, before making the appointments official. Crawford received permission on January 28, 2005.

From May 1, 2000 to September 6, 2005, twenty-nine (29) out of thirty-seven (37) correctional employees hired as Correctional Lieutenants were male. Only three (3) of thirty-one (31) Correctional Lieutenant promotions from 2003 to 2005 were specified as female only. The ratio of subordinate correctional employees at SNWCF as of February 22, 2005 was 64.5 % female to 35.5% male. Defendant Glen Whorton was the Director of NDOC from September 2005 until February 2007.

II.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine

1  issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere
2  speculation, conjecture, or fantasy. <u>O.S.C. Corp. v. Apple Computer, Inc.</u>, 792 F.2d 1464, 1467 (9th
3  Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine
4  issue" of material fact precluding summary judgment. <u>Villiarimo v. Aloha Island Air Inc.</u>, 281 F.3d
5  1054, 1061 (9th Cir. 2002).
6      Summary judgment shall be entered "against a party who fails to make a showing sufficient
7  to establish the existence of an element essential to that party's case, and on which that party will
8  bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment shall not be granted
9  if a reasonable jury could return a verdict for the nonmoving party. <u>See</u> <u>Anderson</u>, 477 U.S. at 248.
10 III.  Analysis
11     Plaintiffs' only remaining claim for relief is based upon gender discrimination in violation of
12 Title VII of the Civil Rights Act of 1964. Under Title VII, it is "...unlawful...for an employer...to fail
13 or refuse to hire or to discharge any individual, or otherwise discriminate against an individual with
14 respect to his compensation, terms, conditions, or privileges of employment because of such
15 individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Here,
16 Defendants concede that a facially discriminatory plan was adopted by the NDOC and therefore this
17 case "turn[s] on whether such overt disparate treatment is for some reason justified under Title VII."
18 <u>Everson v. Mich. Dep't of Corrs.</u>, 391 F.3d 737, 747 (6th Cir. 2004)(quoting <u>Reed v. County of</u>
19 <u>Casey</u>, 184 F.3d 597, 599 (6th Cir. 1999)). Title VII permits overt discrimination if the disparate
20 treatment is a *de minimus* restriction or where it is based on a bona fide occupation qualification, or
21 BFOQ. <u>See</u> <u>Robino v. Iranon</u>, 145 F.3d 1109, 1110 (9th Cir. 1998); <u>Everson</u>, 391 F.3d at 747.
22     Furthermore, the professional judgment of prison administrators is entitled to deference. <u>See</u>
23 <u>Robino</u>, 145 F.3d at 1110. Prison administrators must be allowed to "adopt innovative solutions to
24 the intractable problems of prison administration." <u>Turner v. Safely</u>, 482 U.S. 78, 89 (1987)(in
25 Eighth Amendment cases); <u>see also</u> <u>Torres v. Wisconsin Dep't of Health and Social Servs.</u>, 859 F.2d
26 1523, 1532 (7th Cir. 1988)(though the judgment of prison administrators not entitled to as much

deference in Title VII cases as constitutional cases, "their judgments still are entitled to substantial weight when they are the product of a reasoned decision-making process, based on available information and experience."). The court should not "substitute completely its own judgment for that of the administration." Id.

### A. *De Minimus* Restriction

Defendants assert that because only three out of thirty-one Correctional Lieutenant promotions from 2003 to 2005 were specified as female only and because twenty-nine out of thirty-seven Correctional Lieutenants hired were male from May 1, 2000 to September 6, 2005 that restricting the three Correctional Lieutenant positions at SNWCF had a *de minimus* effect upon Plaintiffs' opportunities for promotion. Plaintiffs entirely failed to respond to Defendants' argument that the restriction had a *de minimus* effect.

The policy limits eligibility for such a small number of positions – three out of thirty-one promotions from 2003 to 2005 – that it imposes such a *de minimus* restriction on male correctional officer's opportunities that it is unnecessary to decide whether gender is a BFOQ for the three Correctional Lieutenants positions at SNWCF. See Robino, 145 F.3d at 1110; Tharp v. Iowa Dep't of Corrs., 68 F.3d 223, 226 (8th Cir. 1995)(en banc), *cert. denied* 517 U.S. 1135 (1996)(exclusion of male officers from female-only shifts constituted such a "minimal intrusion" on their employment that the court need not reach the BFOQ issue to uphold the policy).

### B.  BFOQ Analysis

However, assuming *arguendo* that Plaintiffs raise a colorable Title VII claim, the Court concludes that gender constitutes a BFOQ for the three Correctional Lieutenant posts at SNWCF at issue here. The record supports the claimed BFOQ and Defendants have done little, if anything, to raise an issue of fact.[2] The undisputed record is clear that the NDOC adopted the policy limiting

---

[2]For example, Plaintiffs designated Plaintiff Randy Stout as their expert witness. However, in order to establish proper corrections policy, using the testimony of an employee recently promoted to Correctional Lieutenant to counter that of two former Directors of the NDOC whose decisions are entitled to substantial deference does not establish an issue of fact.

Correctional Lieutenant positions at SNWCF to women based on concerns for security, and inmate safety, privacy and rehabilitation. Clearly the motivating factors were the results of the investigation conducted by NDOC Inspector General Patrick J. Conmay which concluded that male correctional employees were being compromised by female inmates at an alarming rate. Though Defendants try to focus solely on female-on-female conduct of the inmates and the fact that the female inmates were aggressive in attempting to compromise male correctional employees, the investigation was clear in identifying that the problems were caused by an overabundance of male correctional employees who were willing to be compromised and the lack of or ineffective oversight of those employees by male supervisors. The professional judgment of NDOC officials in determining that restricting the Correctional Lieutenants' positions to female applicants only is entitled to deference, because it was the product of a reasoned decision-making process based on available information and experience. See Robino, 145 F.3d at 1110.

Courts have offered various formulations of the BFOQ defense. See Dothard v. Rawlinson, 433 U.S. 321, 333 (1977); Everson, 391 F.3d at 748. "[I]t is impermissible under Title VII to refuse to hire an individual woman or man on the basis of stereotyped characterizations of the sexes[.]" Dothard, 433 U.S. at 333, 335. Where discrimination is on the basis of gender, the employer bears the burden of proving:

> 1) that the job qualification or function justifying the discrimination is reasonably necessary to the essence of the defendant's particular business; and
>
> 2) that gender is a legitimate proxy for the qualification or function because:
>
>> (a) there is a substantial basis for believing that all or nearly all employees of the affected gender lack the qualification or ability to perform that function, or
>>
>> (b) it is impossible or highly impractical for the defendant to insure by individual testing that its employees will have the necessary qualifications for the job.

1  See E.E.O.C. v. Boeing Co., 843 F.2d 1213, 1214 (9th Cir. 1988); Harriss v. Pan American World
2  Airways, Inc., 649 F.2d 670 (9th Cir. 1980).

      A defendant prison must "demonstrate why it cannot reasonably rearrange job responsibilities within the prison in order to minimize the clash between privacy interests of the inmates and the safety of the prison employees on the one hand and the non-discrimination requirement of Title VII on the other[,]" before the prison will be entitled to the BFOQ exception.  United States v. Gregory, 818 F.2d 1114, 1118 (4th Cir. 1987) citing Gunther v. Iowa State Men's Reformatory, 612 F.2d 1079 (8th Cir. 1980); see Jordan v. Gardner, 986 F.2d 1521, 1527 (9th Cir. 1993) (citing Gunther with approval, but also noting that is was overruled on other grounds, by Kremer v. Chemical Constr. Corp., 456 U.S. 461 (1982)).

      In this case, giving substantial deference to the NDOC officials, it is clear that Defendants have met their burden in establishing the BFOQ defense.  The NDOC's goal of reversing the very real and documented problems at SNWCF by providing more privacy for the female inmates and a better environment for rehabilitation and improving safety and security at the prison by reducing the number of compromised male correctional officers justify the designated gender-based Correctional Lieutenant positions.  See Everson, 391 F.3d at 750 (citing Reed v. County of Casey, 184 F.3d 597, 600 (6th Cir. 1999); Robino, 145 F.3d at 1110-11; Tharp, 68 F.3d at 226; Torres, 859 F.2d at 1532)). Much like the situation in Everson, the "poisoned atmosphere" at SNWCF that bred misconduct on the part of both inmates and correctional officers demonstrates that gender is reasonably necessary to the essence of NDOC's "business" of housing female inmates in a secure environment that is safe for both inmate and employee and provides the best environment for rehabilitation of the female inmate. See id. at 753.

      Furthermore, gender is a legitimate proxy because, as demonstrated by the problems at SNWCF, some male officers possess a trait precluding safe and efficient job performance – a proclivity for sexually abusive conduct – that cannot be ascertained by means other than knowledge of the officer's gender.  See id. at 755; Robino, 145 F.3d at 1110-11.  Finally, the NDOC's legitimate

9

penological interests outweigh whatever interest male correctional officers may have in applying for the three Correctional Lieutenant's positions at the SNWCF. Viewing the evidence in a light most favorable to Plaintiffs, Defendants have met their burden of demonstrating that their policy is reasonably necessary to the operation of SNWCF. Defendants have established these three Correctional Lieutenants' positions are a reasonable response to the concerns about inmate privacy, abuse by male correctional officers and the rehabilitation efforts of the facility. Accordingly, the Court grants Defendants' motion for summary judgment.

### C.  EEOC's Reasonable Cause Determination

Plaintiffs have argued that the EEOC's reasonable cause determination in this case, alone, requires the Court to find that a genuine issue of material fact exists for trial. However, while such a determination is highly probative, conclusory determinations which do not disclose which facts the EEOC considered and how it analyzed them have little probative value. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1283-84 (9th Cir. 2000). Here, the EEOC letter rests its determination on vague references to the evidence without disclosing which evidence, other than the listing of the open positions as female only, it relied upon in making its determination. Accordingly, the letter is too vague to be of probative value.

### D.  Request to Deny the Motion Pursuant to Rule 56(f)

Plaintiffs also argue that the motion should be denied because a pending motion to compel and for sanctions regarding discovery would result in discoverable evidence essential to Plaintiffs' action. However, Magistrate Judge Robert J. Johnston has since denied Plaintiffs' motions. Furthermore, Defendants did not object to Judge Johnston's orders and they have become final. See 28 U.S.C. § 636(b)(1)(A); Local Rule IB 3-1. Accordingly, Plaintiffs' request to deny the motion for summary judgment pursuant to Rule 56 (f) is denied.

### IV.  Conclusion

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#30) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendants and against Plaintiffs.

DATED this 9th day of February 2009.

_____
Kent J. Dawson
United States District Judge